OVERTON, Justice,
concurring specially.
In view of my colleague’s dissent, I must emphasize that this rule is not an untried or experimental program. We are adopting a program carefully designed to address delay in the courts, reduce costs to litigants, and identify the need for additional judges. The Conference of Chief Justices, the National Conference of Trial Judges, the American Bar Association, the American Bar Association Commission on Court Delay and Cost Reduction, and the National Conference on Court Delay Reduction have expressly adopted and approved basic principles consistent with this rule. The trial judiciary and the legal profession of this state have actively participated in this rule’s development, and the Supreme Court Efficiency Committee and the Judicial Council of Florida have unanimously endorsed it.
The dissent takes issue with the accepted principle that the judiciary should control its cases. Standard 2.50 of the ABA Standards Relating to Trial Courts, modified in 1984, states in part:
*426 To enable just and efficient resolution of cases, the court, not the lawyers or litigants, should control the pace of litigation. A strong judicial commitment is essential to reducing delay and, once achieved, maintaining a current docket.
The commentary to this standard explains:
Eradicating delay depends on adherence to this one axiom: The court must take the initiative to eliminate the causes of delay. Since the American Bar Association enunciated this conclusion in its 1976 Trial Court Standards, a sizable body of research has established that the leading cause of delay has been the failure of judges to maintain control over the pace of litigation.*
I fully recognize that in assuming early control of cases trial courts must be careful to afford attorneys a reasonable period to prepare and present their case, and, in addition, provide a means for the trial bar to communicate administrative problems to the court.
The time standards set forth in this rule in some instances provide greater periods of time than those established by the ABA standards. These time standards suggest goals that will enable us to identify delay problems and provide a means to identify the need for additional judges.
Neither statutes nor rules make a system work effectively and efficiently. The participants, in this instance the trial judiciary and trial bar, do. This rule is a tool to improve the administration of justice within our state, and, with communication and cooperation between the trial courts and bar, I firmly believe that this rule will accomplish its purposes.

 The articles cited for this statement are:
Friesen, Cures for Court Congestion, 23 The Judges’ Journal 4 (Winter, 1984); Flanders et al., Case Management and Court Management in United States District Courts (Federal Judicial Center: 1977); Friesen et al., Justice in Felony Courts: A Prescription to Control Delay, 2 Whittier Law Review 7 (1979); Sipes et al., Managing to Reduce Delay (National Center for State Courts: 1980); Trotter and Cooper, State Trial Court Delay: Efforts at Reform, 31 American University Law Review 213 (1982); Sipes, The Journey Toward Delay Reduction in Trial Courts: A Traveler’s Report, 6 State Court Journal 5 (Spring 1982). See also Church, Who Sets the Pace of Litigation in Urban Trial Courts?, 65 Judicature 76 (1981).
Additional recent articles on this subject are: Myers, Delay: How Phoenix is Making it Disappear, 23 Judges J. 1 (Winter 1984); Peckham, A Judicial Response to the Cost of Litigation: Case Management, Two-Stage Discovery Planning and Alternative Dispute Resolution, 37 Rutgers L.Rev. 253 (Winter 1985).